181347 Industria Lechera de Puerto Rico, Inc. v. Carlo Flores et al. Good morning, your honors. My name, for the record, is Rafael Manuel Santiago Rosa. I'm legal counsel for Industria Lechera de Puerto Rico, Indulac. Judge Howard, I would like to reserve three minutes for rebuttal. Yes. Thank you, sir. Well, Mr. Jorge Campos, who is the appellee in this case, and his predecessors as administrators of the Milk Industry Regulatory Office, have been entrusted by law, specifically the Organic Act No. 34, to, from time to time, issue administrative orders fixing the prices for milk. Counsel, I'm sorry to interrupt. Yes. For our recording purposes, can you stay close to the mic? Sorry. Like I said, Mr. Jorge Campos and his predecessors have been entrusted by law, specifically Act 34, the Organic Act Regulating the Milk Industry Regulatory Office, to issue, from time to time, administrative orders fixing the price of milk at all levels in the chain supply here in Puerto Rico. The present case begins with a judicial action, basically filed by Indulac before local court, basically seeking that the same be reversed. And the specific administrative order is one that is numbered 2007-06. And it is an uncontested fact, your honors, that that administrative order was issued without following not a single requirement of the Act No. 34's rule-making due process requirements. And that is an uncontested fact. So that's a state claim. That's correct. That's a state claim. I'm sorry. We have an obligation to look into our jurisdiction. And I have a question about whether removal was appropriate. The district court said that there was federal question jurisdiction that had the authority under the All Writs Act, and as well to enforce the settlement agreement. I don't think that any of those bases independently supply federal jurisdiction. So what's the argument for jurisdiction in the federal court to make removal appropriate? I believe, your honor, again, that the district court has a flawed interpretation of its judgment and the underlying settlement agreement. If you look at that settlement agreement, your honor, and we are not in any way, shape, or fashion contesting now its validity. What we are questioning now is the ability of that office, the industry regulatory office, to issue an administrative order without following the rule-making process. And that, your honor, is something that was somehow circumvented by the district court and by the … Okay. So why are we in a federal appeals court? Do we have jurisdiction over this appeal? Because the district court made a ruling over that and made a specific ruling attesting to the fact I wasn't the one doing it. I filed my case in local court. I filed my case before the Puerto Rico Court of First Instance, and the government was the one that removed the case into federal court. Right, and you didn't seek a remand. And I'm asking what is the basis of our jurisdiction, which I think we have an independent duty to look into. I believe… If you don't know the answer, that's fine. I believe the argument thrust by Judge Dominguez was specifically that the administrative order was the sibling of the settlement agreement and, therefore, his judgment. And as a result, there was a federal jurisdiction. That was his ruling, I guess. Having said that, Your Honor, the statutory rulemaking rules established by Act 34 are not waivable, are not renounceable, are not relinquished, and cannot be waived in any way, shape, or form. But the district court made a ruling, and I'm going to quote just to get it out of context. It reads, given that the schedule increase was a part of the settlement agreement executed by the parties and approved by the court, there was no need to comply with administrative proceedings prior to its implementation. So, essentially, the district court is saying there that it can legally issue a judgment as per a settlement agreement whereby the parties are somehow released to following the law of Puerto Rico. And that, Your Honor, frankly, or simply put, is a post-judgment, not a pre-judgment, a post-judgment interpretation of that settlement agreement under Case 04-1840 that simply is untenable and would render the settlement agreement null and void. So the only tenable interpretation would be, the only tenable interpretation would be, for that specific settlement agreement to state the obvious, which is that it is only binding upon those parties that signed the same, and there were parties to the same that were privy to the negotiations, object of the same. And it is also an uncontested fact that my client, at least, at the very least, Indulak or a bunch of other of the market participants weren't also, including the Puerto Rico lady farmers, weren't also parties to that agreement and weren't also made a part or signed the document. But the most incredible thing is that in order to somehow validate the issuance of the administrative order, the government is claiming, it's claiming, that it is doing so not only as per the settlement agreement, but as per a regulation clause that is incorporated as an exhibit to that settlement agreement and also as a result of an administrative order, which are both also incorporated exhibit ones and two of that settlement agreement. And that, simply put, is also untenable. And why? Because both documents specifically contemplate in their text, I can read from them, I have them right here, specifically in the case of the regulation, it reads, the proposed regulation, I should say, in section three for purpose, that regulation is based on the regulatory principles included in public law 34, adopted hearing compliance with the above-mentioned judicial order. The administrative agency held multiple public hearings with the purpose of receiving proposals related to the state of the milk industry in Puerto Rico, and the additional regulation being necessary to determine, and it goes on, as to the parties that allegedly participated in those hearings. That's simply not true. Here is the representative of the government, and she will say the truth. The hearings that are referenced to in the regulation never occurred. The same happened with the administrative order that was attached as an exhibit to that settlement agreement. It makes reference, although it was never translated by the government into Spanish, it makes reference, and I'm going to roughly translate it, that there were studies in the area of economy, accounting, finance, during the months of June through October. Is this in evidence? It is in the record, Your Honor. Is this in evidence? We never had an opportunity to present any evidence because the case was just dismissed. It's not in the evidence. I don't think you should be referring to it. I'm not sure I follow you, sir. Maybe you didn't understand, but you are reading from now that you say it's in Spanish. Yeah. Is that document in the record of this case? Yeah, it is. It is page 90. I'm reading from page 97 of the joint appendix submitted to the court. Well, I think somebody has to provide a translation for a court required by the law. For reasons unbeknownst to me, it wasn't, and my apologies for that if I'm too blind, but it wasn't. But in any event, Your Honor, I can represent as an officer of this court that this document also, makes the representation that there were professionals in the areas of accounting, finance, and economy that performed studies, analysis, that were simply never done or, at the very least, were never disclosed to the public. But more importantly, it also makes references to public hearings, which, again, did not occur. So it begs the question then. Counsel, please stay at the podium. It begs the question. My apologies, Your Honor. You know, but on this document, you're asking us to look at this document, rely on this document, and analyze the document. Are we going to get it in English? Yeah, I will do so, Your Honor. And I guess the use of my argument. Are there other documents that are only in Spanish? This is the only one that I, over the weekend, found out that it was in Spanish. My apologies again. But having said that, how is it legally permissible for someone to aver that the issuance of the price order, which is the object of our appeal, can be supported by a regulation and by an administrative order, which never were approved, which never followed the rulemaking due process minimum and mandated statutory requirements in order to do it, in order to adopt them. I believe that the law is that a state agency, in order to resolve a federal complaint, may not have to comply with all state laws. It does have to unless compliance with those laws would be in violation of federal law. I think that's the standard. And so has there been any violation of federal law here? Yes, according to the Ninth Circuit. Because in the Ninth Circuit, in the case of Conservation Northwest v. Sherman, that's seven. If there's been a violation of federal law, then the state administrative process doesn't have to be followed in order to settle. But I'm not sure that's the ruling of the Ninth Circuit. Let me read for you the ruling in that case, and you'll find out what I'm saying. It says, that would have been subject otherwise to statutory rulemaking procedure. So, in essence, what they're saying is that what the district court did, which is adopt into a consent decree a settlement agreement with an administrative order and a Regulation 12 cannot justify the issuance later following the rulemaking process, cannot justify the issuance of the first order of this case. And that, Your Honor, from my perspective, is crystal clear. And the case, it is cited in the brief of the government. It wasn't even cited in mine. Again, I believe, and there were some issues that were raised with respect to Resjudicada. And we're not questioning the validity of the settlement agreement. We're not contesting the validity of the Regulation 12 containing that settlement agreement, nor the administrative order. What we are doing is that we are contesting the ability of the office, of the Millbury Industry Regulatory Office, to apply the terms and conditions of those documents to indulge in its contested administrative order from 2017. And that, Your Honor, again, is a blatant violation, in my opinion, not only of Indulac, but also of the Puerto Rican consumer, also of the distributors that do distribute the milk for Indulac and the retailers, all of whom are entitled to at the very least a modicum of the process as guaranteed by these rulemaking rules contained in Act 34. Thank you. Thank you. Good morning, Your Honors. My name is Edward Hill. I represent the Secretary and the Administrator in this case. Ten years ago, this Court of Appeals held that the injunctive relief provided by the District Court in the form of the so-called regulatory accrual was a valid exercise of the District Court's equitable powers. I'm sorry, Counsel. Can you go back to the removal jurisdiction question that I asked at the beginning and tell me why? I can, and I'll be happy to. This panel, Judge Torreyes, Howard, and Thompson, in Bonilla-Ortiz v. Federacion de Ajedrez, a 2013 case, handled that issue. I have split the time with co-counsel for Suiza, Escalera. He will be addressing the jurisdictional issue a little bit more, but I would like to just state for the record that because I performed the removal, Ajedrez, chess players, is a completely distinguishable case from this one. There were three jurisdictional predicates in my pleading. All writs, anti-injunction, and the reservation of jurisdiction by the District Court on all matters that pertain to compliance with regards to what is now the settlement agreement, now consent decree. And that's why I started off this argument reminding the court that the regulatory accrual was validated by this court as an equitable remedy. That is the very same issue that is being discussed today. Although kind of shuffled under the papers, in 2013, when the settlement agreement consent decree was executed, the parties agreed to defer that regulatory accrual. This court noted, because I stood before this court challenging the regulatory accrual, not only on the facts, but on the law. And I argued to this court that it was not. This court said that it was a valid exercise. So when this decision came back, there was a lot of litigation on the compliance with the regulatory accrual. And I challenged it both factually and I continued to challenge it legally. While there was even a court case pending before the Supreme Court to deal with the regulatory accrual. The case was in compliance, was litigated. I believe it was contested at every area. And there was an appeal that I filed that obtained a stay. That stay provoked the parties to come to the table and to create the settlement agreement, which you know about because it was appealed twice. One of the appellants in that case was Indelac. And in that case, and here I'm using it as a walk into the argument of res judicata, that case argued the same things that Indelac is arguing today, excuse me. Notice and comment. We didn't have notice and comment for the settlement agreement. We didn't have notice and comment for the administrative order. We didn't have notice and comment for the Regulation 12. And you said that they were untimely and dismissed on the merits. That's what happened. Here, they collaterally attack the judgment by filing a claim in state court saying notice and comment have not been provided. And I read to the court from the settlement, by the date of the execution of this agreement, the plans have been collecting 3 cents of the regulatory accrual charge and the monies collected have already been deducted from the regulatory accrual to obtain an unpaid principal balance that is within the settlement agreement. A new price order, which is Exhibit 2, enters into effect on November 7, 2013. And there's going to be a 3 cent deferral until 2017. The administrator puts in a new order. Puts in an order, says it's deferred, then upon those four years elapsing, puts in another order and says the regulatory accrual is back in. This is the 2017 order that they're challenging for not complying with the Commonwealth Administrative Procedures Act. Exactly. So why wouldn't the appropriate remedy simply be an injunction issued by the federal court as opposed to removing this state-based claim? I asked the court for, upon removal, I asked the court to issue a preliminary injunction and a permanent injunction. And I said, Judge Dominguez, INDELAC is collaterally attacking your consent decree. And INDELAC said, I'm not going to contest jurisdiction. I'm not going to, you have jurisdiction. You go ahead, Judge, and you deal with this case. So when you asked originally, Your Honor, you know, we have, we're looking at jurisdiction independently. I made sure, I tried very hard to make sure that the federal court had jurisdiction. The issue of jurisdiction, I'd like to say, has not been briefed. It hasn't been raised by INDELAC. And I understand that Your Honor has, you know, may sui sponte, asked about this. But I must reiterate that the court below had jurisdiction, and I believe that in terms of appellate review, this court also has jurisdiction. To go on, and I think I'm almost done with my time because I see that the clock is ticking to two and a half minutes. I'd like to address the question that Your Honor posed a little while ago about whether there was, you know, a federal issue, right? And the, I must say that there is no need for compliance with state regulatory details to put in that deferred regulatory accrual order. And the reason is because the consent decree is a judicial act. And a little while ago, counsel for INDELAC quoted a case that distinguished whether it was a procedural, and I cited the case, whether it was a procedural or a substantive matter, right? And the Ninth Circuit made that distinction. And I briefed the court saying this is a near procedural matter. There is no need to go into state requirements because all we're talking about is notice and comment. And I understand that INDELAC's counsel hasn't been here for the full case. I have stood before this court and the court below for 12 years on this case. And I can tell this court without hesitation that there were, that the act, the equivalent of APA, the state APA, was fulfilled. And we came to the court and we told the court, upon the injunction, we've done all of these things. We've done the hearings. We've given the notice. We've asked for the comments. The court's decision in this case that's on appeal now doesn't say there was substantial compliance. It says it's not necessary, right? Yes, but I pled also that we had substantial compliance. What you're saying is an alternative basis for affirmative. Precisely. And so the record is developed below that I demonstrated to the court. Look, we did this. We did that. We complied with all of the requirements to put in the Regulation 12 and any other orders. However, for the June 2017 order, none of it was necessary because I was complying with the language strictly. It will be deferred until January 1, 2017. And thus, I did. Thank you. Thank you, Your Honor. Chief Judge Howard, and may it please the Court, Rafael Escalera for Intervenor Appellee Sousa Daly. I'm going to go directly, Your Honor, if I may, to the jurisdictional question. What is important is not the title of the filing that initiated this proceedings in federal court, but what the federal court did. And it tells us what it did. It says specifically in the order, the court exercising its jurisdiction over the enforcement of judgment in Civil Case 04-1840, orders indirect to comply with the covenants agreed therein. That's the ruling of the court. And that ruling, Your Honor, is consistent with the first filing because although the first filing was entitled Petition for Removal, you have held repeatedly that finally prolific case law across the circuits maintains that a title given to a motion or an appellant's version of any legal action does not control its meaning. Mischaracterization of a ruling by an appellant does not control. What happened here is that the first filing was titled Petition for Removal, but that wasn't, and it invoked both the position of the removal of the Old Reads Act, but also the jurisdiction, undeniable jurisdiction of the federal court to enforce its judgment. And that was the one that was exercised. And that, Your Honor, is also consistent with what happened later on. The two days after the petition was filed, the first filing, the administrator of Fort Hill filed an injunction against the continuation of the local proceedings. That injunction also invokes the jurisdiction to put into effect the prior judgment. And that is exactly what the Sygenta case, which was the basis of this court's opinion in the Federación de Jardines case, that's exactly what the Sygenta case in a footnote says can be done. Why wasn't the injunction issued? Because it became irrelevant, the injunction, because Indula came to court and said, that's fine, I'll litigate my case here, and filed its defense as to what it was doing in federal court. So there was no local procedure to enjoin. It would have been an advisory opinion to say, I'm issuing an injunction against a local proceedings that is not going forward because no one is litigating there. And also, Your Honor, the injunction was finally declared moot, basically. And in declaring moot the injunction, the court again refers to its jurisdiction to enforce the judgment. The title of the original pleading is irrelevant. It could have been said whatever. The point is, this is the jurisdiction the court exercised in providing the remedy, and it says so repeatedly. Can you say a word about the ability to enforce, the court's authority to enforce the consent decree against a non-signatory? Well, first of all, Your Honor, it is very strange that Indula comes here and says it is a non-signatory. This is a regulated market. In order to regulate the market, you regulate all aspects of the market and provide remedies for the violation of the Constitution that occurred with the taking. The prices for the consumers that are not part of the procedures were set. The prices for the retailers, the prices for the distributors, the prices for Indula, which, by the way, was an intervener who presented more evidence in the case than the actual administrator. And it came and it objected. Everything that Indula is objecting right now here are things that are part of the judgment. Basically, they're saying the regulatory accrual doesn't apply to me. The regulatory accrual has been applied to Indula since 2008 after the injunction that this court affirmed. The argument that the regulatory accrual should not be applied to them in the injunction was made by Indula and decided against Indula by this court. The regulatory accrual at different amounts continued in place until the judgment. The judgment says, I'm not going to continue the regulatory accrual now. I'm going to create a space of about four years with .1 cents of regulatory accrual that was embedded in the price of Indula. So the regulatory accrual didn't disappear. It stayed at .1 cents. And the order says it's going to go back to 3.1 cents when January 2017 comes. So in essence, Your Honor, the order that Indula is protesting against here wasn't necessary. Why? Because all the administrator had to do was to say, I'm putting into effect the injunction, which contains a price order that says the regulatory accrual is going to stay at .1 until January 2017, at which time it will go back to 3.1 cents. If it pleases the Court, a few brief comments. Number one, in section number two, which is at page 22 of the appendix, the parties agreed to settle all matters pending in the instant action in the interest of justice without conceding any plaintiff's Suiza or Bacariatres Mojitas claims as alleging the complaint or the validity, and I stress, of any of the judicial orders, opinions, or regulations entered by this court or the circuit court. My reading of that is that the parties agreed to a completely new ballgame, and whatever happens before the execution of this is a completely new game. And that's what they wrote. I didn't write that. Again, with respect to the administrative order, which is an object of this document, it reads, Oril will enact. It nowhere states that that administrative order will enter into full force and effect merely by the execution of this document. Oril will have to do something. Oril will enact. Oril will have to comply, I would say, with the rulemaking processes or rules required by Act 34. And they simply didn't. Exactly the same language applies to regulation number 12. It reads, Oril will immediately enact. It doesn't say it is immediately enacted. It requires action by the administrative agency, and the administrative agency has to follow a modicum of due process. A modicum of due process will establish a regulatory accrual over a party, which under the new rules of the game, because all of the orders and resolutions and judgments by the circuit court and the district court were rendered nor considered the validity by any of the parties, now I'm bound by a private document to accept a regulatory charge over my product. If that's legal, I guess I've lost this appeal. But having said that, having said that, the regulatory accrual, they're saying it's merely a restating of a $0.03 regulatory accrual. Yes, for BTM, Baqueria Tres Mojitas, and for Suiza. If you look at the briefs of the two parties, of the government and Suiza Deiri, they say that the regulatory accrual that was imposed upon Indurac was only a cent and a half. Now, pursuant to an administrative order that was never approved, and a Regulation 12 that was never approved, either they're multiplying by two, the regulatory accrual that was imposed upon my product, with the caveat that my product is already $0.60 per quarter, a lot more expensive than fresh milk, meaning Suiza's product. That's why, Your Honor, that Regulation 12 and that administrative order cannot be the legal basis for the imposition of $0.03 or $0.01. In the worst case scenario for us, if I may finish my thought, the government is saying that I am only supposed to be given $0.03. Suiza says there is $0.03 and a tenth. Isn't that a controversy of fact that should have precluded the dismissal of the complaint and at least triggered an evidentiary hearing in order to determine who's right or wrong? Because there's a dispute, a factual dispute. I'm saying that there's no reinstallation of $0.03. I'm saying that the regulatory accrual was only a cent and a half. Now it goes up to twice the amount, $0.03. And now they're saying it's $0.03 and one-tenth. Which one is it? That's a controversy of fact. Thank you. Thank you all. All rise.